**SPENCER FANE LLP**
**Blair M. Jacobs** *(Pro Hac Vice)*
**Christina A. Ondrick** *(Pro Hac Vice)*
**John S. Holley** *(Pro Hac Vice)*
900 16TH ST. N.W., Suite 400
Washington, D.C. 20006
Telephone:  816.474.8100
Facsimile:   816.474.3216
Email:
    bjacobs@spencerfane.com
    condrick@spencerfane.com
    jholley@spencerfane.com

**SPENCER FANE LLP**
**Theresa C. Becerra** (State Bar No. 205338)
201 Santa Monica Blvd., Suite 550
Santa Monica, CA 90401
Telephone:  424.217.1830
Facsimile:   424.217.1854
Email:        tbecerra@spencerfane.com

Attorneys for Plaintiff
NETGEAR, INC.

Kalpana Srinivasan, Bar No. 237460
ksrinivasan@susmangodfrey.com
Michael Gervais, Bar No. 330731
mgervais@susmangodfrey.com
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

J. Hoke Peacock, III, *pro hac vice*
tpeacock@susmangodfrey.com
Shawn L. Raymond, *pro hac vice*
sraymond@susmangodfrey.com
Hunter Vance, *pro hac vice*
hvance@susmangodfrey.com
Larry Liu, *pro hac vice*
lliu@susmangodfrey.com
Julia Risley, *pro hac vice*
jrisley@susmangodfrey.com
**SUSMAN GODFREY L.L.P.**
1000 Louisiana, Suite 5100
Houston, Texas 77002-5096
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

Katherine Peaslee, Bar No. 310298
kpeaslee@susmangodfrey.com
Steve Seigel, *pro hac vice*
sseigel@susmangodfrey.com
**SUSMAN GODFREY L.L.P.**
401 Union Street, Suite 3000
Seattle, Washington 98101
Telephone: (206) 516-3880
Facsimile: (206) 516-3883'

*Attorneys for Defendant*
*Huawei Technologies Co., Ltd.*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NETGEAR, INC.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>HUAWEI TECHNOLOGIES CO., LTD.,<br><br>　　　　Defendant. | Case No. 2:24-cv-00824-AB (AJRx)<br><br>**JOINT RULE 26(f) REPORT**<br><br>Action Filed:　01/30/2024<br>Date:　　　　September 6, 2024<br>Time:　　　　10:00 AM<br>Courtroom:　7B |

Plaintiff NETGEAR, INC. ("NETGEAR" or "Plaintiff") and Defendant Huawei Technologies Co., Ltd. ("Huawei" or "Defendant") (together, the "Parties") met and conferred on August 13, 2024 and submit this Joint Rule 26(f) Report pursuant to the Court's Order Setting Scheduling Conference (Dkt. 87) and Federal Rule of Civil Procedure 26(f).

During the August 13, 2024 conference, Mr. Jacobs, Ms. Ondrick, and Mr. Holley participated on behalf of NETGEAR. Mr. Seigel, Mr. Raymond, Mr. Vance, and Ms. Risley participated on behalf of Huawei.

**Exhibit A** is a copy of the Court's Scheduling Worksheet with NETGEAR's and Huawei's proposed schedule for dates identified in the worksheet. **Exhibit B** is a copy of Huawei's proposal for the case schedule, which includes "dates in addition to those on the Worksheet," Dkt. 87 at 5, specifically patent-specific deadlines for Huawei's intended patent counterclaims, *see infra* Section C.ii. The Parties dispute the scope of discovery and schedules:

- Netgear's Statement**:** NETGEAR proposes a scope of discovery, schedule and trial commensurate with the allegations in NETGEAR's January 30, 2024 Complaint. NETGEAR believes it is inappropriate to include deadlines that anticipate claims being dismissed or added to the case. NETGEAR seeks a trial date 18 months from the filing of the Complaint consistent with the Court's Scheduling Worksheet.

- Huawei's Statement**:** Huawei proposes a case schedule and trial tailored to those claims currently in scope and that Huawei has not moved to dismiss (*i.e.*, Netgear's breach of contract and declaratory judgment claims, *i.e.*, counts 5 and 6), as well as Huawei's intended patent-infringement counterclaims described in Section C.ii below. Huawei proposes a trial date set for 20 months from the date of Huawei's Answer to Netgear's breach of contract and declaratory judgment claims.

**A.    STATEMENT OF THE CASE**

i.      **NETGEAR'S Statement:**

This case is one of several cases between the parties. This case arises out of Huawei's long-running anticompetitive, racketeering, fraudulent and unfair business practices pertaining to standard essential patents ("SEPs"). The expansive claims of anticompetitive and unlawful conduct alleged by NETGEAR go well beyond a mere breach of contract case, and it is unfair to describe it as a mere contract case. The Complaint properly alleges a course of conduct by Huawei violating Section 2 of the Sherman Act, the Rackeeter Influenced and Corrupt Organizations Act, and California Business & Professions Code § 17200 and additionally pleads breach of contract, fraud, negligent misrepresentation and promissory estoppel. Huawei's conduct includes deceptive misrepresentations to standard setting organizations, abusive licensing practices, anti-competitive behavior, unfair business practices, breaches of contracts, schemes to defraud and dominate markets worldwide, and patterns of racketeering activity. For example, Huawei made false promises to license any SEPs on reasonable and non-discriminatory terms ("RAND") terms and used this deception to attempt to extract supracompetitive rates from NETGEAR and other implementers by, among other things, attempting to exploit its unlawfully acquired market power in SEPs, demanding un-RAND royalties and making and acting on threats to seek injunctive relief. Huawei's abuses have been long-standing and, according to the Department of Justice's pending Superseding Indictment, Huawei has a pattern of using fraud and deceit to abuse intellectual property.

The Complaint also seeks declaratory judgment that Huawei's patents are subject to an implied license and/or exhausted by a license between Huawei and Qualcomm Incorporated.

Huawei's attempt to inject unidentified and unfiled patent counterclaims into the scheduling process should be rejected as an unfair delay tactic intended to prejudice NETGEAR while also shifting the entire focus of the case away from Huawei's unlawful and unfair transgressions.

**ii.      Huawei's Statement:**

This case arises out of a dispute between Huawei and Netgear over Huawei's request that Netgear license Huawei patents essential to certain versions of the Wi-Fi technology standard ("Wi-Fi SEPs").  Netgear has long used Huawei's patented Wi-Fi technologies in Netgear products without permission and without compensating Huawei for such use.  For years, Huawei has sought to negotiate a license with Netgear, first reaching out on July 9, 2020. Compl. ¶37. Hearing only silence, Huawei sent seven more unanswered letters in an attempt to negotiate a license. *Id.* ¶¶114–15; 118, 121, 126. Again hearing nothing, and seeking to protect its rights, Huawei sued Netgear for patent infringement in several foreign jurisdictions. *Id.* ¶¶118-119, 127, 134. Only after Huawei sued did Netgear respond, making a counteroffer on May 2023. *Id.* ¶126. In retaliation, Netgear filed this suit. But instead of focusing on the licensing dispute at hand, Netgear accuses Huawei of a "worldwide pattern and scheme to unlawfully manipulate and dominate global markets." *Id.* ¶¶ 138–39, 152.

In its Complaint, Netgear asserts only two claims (claims 5 and 6) that go to the heart of this dispute, which Huawei has not moved to dismiss: (1) a **breach-of-contract** claim alleging Huawei breached its obligations to the IEEE, a standard-setting organization, to license Huawei's Wi-Fi SEPs on Fair, Reasonable, and Non-Discriminatory terms; and (2) a request for a **declaratory judgment** that Netgear has an implied license to Huawei's patents and/or that Huawei's patents rights are exhausted by a license between Huawei and Qualcomm (the "Qualcomm License").

Huawei seeks dismissal of Netgear's antitrust, RICO, common law fraud, negligent misrepresentation, promissory estoppel, and California UCL claims (claims 1-4, 7-10) which are legally infirm and fail to state a claim. On June 14, 2024 Huawei filed a Motion to Dismiss (Dkt. 80) and Motion to Strike (Dkt. 76). The Motions are pending and will be heard on **October 11, 2024**. *See* Dkt. 93.

Huawei intends to assert patent counterclaims, as detailed in § C.ii below.

## B.    SUBJECT MATTER JURISDICTION

NETGEAR in its Complaint alleges that this Court has jurisdiction over NETGEAR's claims under 28 U.S.C. §§ 1331, 1332(a), 1337, 1367, and 2201-02 and 18 U.S.C. § 1964, and that this Court has supplemental jurisdiction over the state claims because those claims form part of the same case or controversy as the federal claims. Because the parties are diverse, Huawei does not contest this Court's subject-matter jurisdiction in this case. Huawei, however, does not agree that NETGEAR's federal and state claims are part of the same case or controversy. Huawei intends to assert counterclaims for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq.*; Huawei asserts this Court will have subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

## C.    LEGAL ISSUES

### i.    NETGEAR'S Statement:

NETGEAR expects that the following will be the key legal issues concerning NETGEAR's s affirmative claims:

   i.    Whether Huawei committed antitrust monopolization in violation of Section 2 of the Sherman Act.

   ii.    Whether Huawei attempted to commit antitrust monopolization in violation of Section 2 of the Sherman Act.

   iii.    Whether Huawei committed civil RICO violations under 18 U.S.C. §§ 1964 and 1962(c).

   iv.    Whether Huawei committed civil RICO violations under 18 U.S.C. §§ 1964 and 1962(d).

   v.    Whether Huawei breached express or implied contracts to comply with IEEEE RAND obligations.

   vi.    Whether Huawei holds any patent rights that are subject to an implied license and/or exhausted under the Qualcomm License.

   vii.    Whether Huawei knowingly, or recklessly and without regard to its

truth, made a false promise to the IEEE that it would license its technology on RAND terms and conditions so as to induce the IEEE to adopt its technology.

viii.    Whether Huawei negligently misrepresented that it would license its technology on RAND terms and conditions without reasonable grounds for believing that to be true and with the intent to induce reliance by others on its misrepresentation.

ix.    Whether NETGEAR reasonably relied on Huawei's promises to offer and grant a license to its IEEE 802.11 essential patents on RAND terms.

x.    Whether Huawei committed unfair, unlawful, or fraudulent business acts or practices in violation of Cal. Bus. & Prof. Code § 17200.

NETGEAR's identification of legal issues is based on the scope of the case as currently contemplated by the operative pleadings. Huawei has not answered the Complaint or filed any counterclaims. At this time, NETGEAR cannot address or respond to speculative, unidentified allegations that might (or might not) be filed at a future point, particularly because Huawei's currently contemplated potential future claims are wholly unrelated to the issues in this case. Huawei's contention that it cannot provide notice of its patent infringement counterclaims is baseless. Huawei could have identified to NETGEAR and/or the Court infringement positions it intends to raise. Moreover, Huawei's contention that patent infringement counterclaims are somehow related to NETGEAR's antitrust, RICO and unfair competition claims strains credulity because NETGEAR's Complaint contains no information concerning potential U.S. patent infringement.

**ii.    Huawei's Statement:**

The legal issues in this matter will also include:

xi.    Whether the Court should strike under Rule 12(f) paragraphs from Netgear's Complaint that have been lifted directly from third-party pleadings in other actions to which Netgear is not a party;

xii.    Whether the Court should dismiss under Rule 12(b) Netgear's Claims for Relief Nos. 1–4 and 7–10.

<u>Huawei's Patent Counterclaims</u>: Huawei also expects to file patent-infringement counterclaims against Netgear for making, using, offering to sell, selling, or importing into the United States routers, wireless access points, and other networking technologies that directly and/or indirectly infringe patents on Wi-Fi technology owned by Huawei and that are included in the set of Wi-Fi patents that Netgear has refused to license from Huawei. *See*, *e.g.*, 35 U.S.C. § 271.

In accordance with Federal Rules of Civil Procedure 7(a) and 13, Huawei intends to assert its patent counterclaims concurrently with the filing of Huawei's Answer to Netgear's breach of contract/FRAND (count 5) and declaratory judgment of implied license and/or patent exhaustion (count 6). The deadline for Huawei to file its Answer has not yet come due given that "[a] motion under Federal Rule of Civil Procedure 12 ('Rule 12') tolls the time for defendants to serve a responsive pleading. Fed. R. Civ. P. 12(a)(4)." *Tenser v. Ryan*, No. 2:19-cv-5496 VBF RAO, 2020 WL 4760192, at *4 (C.D. Cal. May 26, 2020). In accordance with this Court's practice in other cases, Huawei anticipates filing its Answer following the Court's resolution of Huawei's pending Motions to Dismiss (Dkt. 80) and Strike (Dkt. 76).[1]

Netgear's assertion that Huawei's intended patent-infringement counterclaims are "speculative [and] unidentified" is misplaced. Huawei is only permitted to file its counterclaims in accordance with Federal Rules of Civil Procedure 7(a) and 13; Huawei thus must await the deadline for Huawei to file its Answer to Netgear's

---

[1] *See*, *e.g.*, *Little v. Soto*, No. 2:17-cv-4655-AB (JEM), 2018 WL 1583463, at *1 (C.D. Cal. Mar. 28, 2018) (affirming order of magistrate judge granting motion to dismiss certain grounds and directing party to file answer to remaining grounds); *Jones v. Taylor*, No. 2:21-cv-4243-AB (KS), 2022 WL 4448904, at *1 (C.D. Cal. Sept. 23, 2022) (same); *W. Air Charter, Inc. v. Schembari*, No. 2:17-cv-420-AB (KSX), 2017 WL 10638759, at *11 (C.D. Cal. Oct. 6, 2017) (granting in part and denying in part motion to dismiss and directing defendant to answer surviving claims); *Luna v. New Hampshire Ball Bearings, Inc.*, No. 2:18-cv-10755-AB (JC), 2021 WL 4539735, at *4 (C.D. Cal. May 4, 2021) (denying motion to dismiss and directing party to file answer).

Complaint to assert counterclaims. Also baseless is Netgear's assertion that Huawei's intended counterclaims are "wholly unrelated to the issues in this case." As Netgear admits in its Complaint, the parties' licensing dispute arose because, as Huawei repeatedly informed Netgear through multiple letters and emails (which Netgear repeatedly ignored), Netgear was infringing Huawei's Wi-Fi SEPs. *See* Compl. ¶¶112-117. Huawei's patent infringement counterclaims against Netgear will fall within scope of the Huawei Wi-Fi patents at issue in Netgear's Complaint.

The below include the key legal issues on Huawei's intended patent counterclaims:

xiii. a determination of the scope of the asserted claims of the patents that Huawei intends to assert (*i.e.*, *Markman* or claim-construction);

xiv. any other legal issues that may arise in connection with the alleged infringement of Huawei's patents, including infringement, patent validity, damages resulting from Netgear's infringement, which shall be no less than a reasonable royalty for Netgear's use of the inventions disclosed in Huawei's asserted patents, willfulness of any alleged infringement, exceptional case status under 35 U.S.C. § 285, and the appropriate forms and extent of relief, including monetary damages, declaratory relief, interest, attorneys' fees, and costs.

## D. PARTIES, EVIDENCE, ETC.

### iii. NETGEAR'S Statement:

NETGEAR's currently anticipated percipient witnesses may include one or more NETGEAR personnel with knowledge of NETGEAR's Wi-Fi technology, the market for Wi-Fi technology and its participants, and the injuries suffered by NETGEAR as a result of Huawei's behavior described in NETGEAR's Complaint; witnesses, employees, and/or agents of Huawei; witnesses, employees, and/or agents of Huawei Technologies USA Inc.; witnesses, employees, and/or agents of Huawei Device USA Inc.; witnesses, employees, and/or agents of Futurewei Technologies,

Inc.; witnesses, employees, and/or agents of other victims of Huawei as described in NETGEAR's complaint (see Complaint ¶¶ 171-258) ; and other entities and individuals not known to NETGEAR at this time who may possess relevant information.

At this time, Huawei has not responded to NETGEAR's first set of document requests or interrogatories, and thus, NETGEAR is not in a position to identify with specificity the key documents relevant to its affirmative case. NETGEAR has sought discovery with respect to the following topics, among others:

- Huawei's corporate structure;
- Huawei's efforts to use licensing to offset the impact of U.S. sales bans by the U.S. government;
- Huawei's statements on RAND licensing and its process for determining whether an offer is RAND;
- Huawei's licensing (SEP and non-SEP) revenue;
- Huawei's Wi-Fi patents and whether they are actually essential;
- How Huawei's SEPs compare to the SEPs of other companies, e.g., value and essentiality;
- Huawei's *ex ante* statements regarding its SEP royalty rates;
- Huawei's assessment of Wi-Fi 6 patent pools;
- Huawei's negotiations with NETGEAR, including Huawei's analysis of NETGEAR and NETGEAR products;
- Licenses, offers, and analysis thereof where Huawei was the licensor;
- Licenses, offers, and analysis thereof where Huawei was the licensee;
- Huawei's letters of assurance to the IEEE, ETSI, and other standards and analysis regarding the same;
- Huawei's policies and staff reimbursements for intellectual property theft and development;
- Huawei's interactions, settlements and licenses with Qualcomm, ADVA,

Verizon, Harris, T-Mobile, Amazon, and AVM;

- Huawei communications with Futurewei, Huawei Device USA, and Huawei USA relating to SEPs and licensing;

- Documents relating Huawei's efforts to misappropriate the intellectual property of T-Mobile, Cisco, Motorola Solutions, Quintel Technology, Fujitsu Network Communications, and CNEX and efforts to obstruct civil litigations related thereto; and

- Documents relating to Huawei's founder's statements as reported by the Wall Street Journal and The Times regarding Huawei's anticompetitive conduct in the market.

NETGEAR's investigation in this matter is ongoing, and NETGEAR reserves its right to request or produce discovery and to present additional evidence and testimony beyond the particular categories identified above.

NETGEAR, Inc. is an American computer networking company based in San Jose, California. NETGEAR has no parent companies. NETGEAR incorporates its Rule 7.1 Disclosure (Dkt. 3).

iv. **Huawei's Statement:**

The Parties' initial disclosures are due on August 27, 2024. In its initial disclosures, Huawei intends to provide all information required by Rule 26(a)(1)(A) as related to Netgear's breach of contract/FRAND and declaratory judgment claims, *i.e.*, counts 5 and 6. Huawei expects that its initial disclosures will include a list by name of specific individuals from Huawei, Netgear, their affiliates, and/or third parties with knowledge of Huawei's licensing of Huawei's Wi-Fi patents; Huawei's communications with Netgear regarding licensing of Wi-Fi patents; Huawei's policies and practices with respect to licensing of Wi-Fi patents; Huawei's communications with IEEE regarding Huawei's Letters of Assurance for Wi-Fi patents; the "Qualcomm License" referred to in Netgear's Sixth Claim for Relief; Netgear's communications with Sisvel regarding the Sisvel Wi-Fi pool; Netgear's

claims and defenses in this litigation; the operation and functionality of Netgear's Wi-Fi products; Netgear's alleged damages; and Huawei's damages for Netgear's infringement of Huawei's Wi-Fi patents.

Huawei Technologies Co., Ltd.'s direct parent corporation is Huawei Investment & Holding Co., Ltd. No publicly held corporation owns 10% or more of Huawei's stock. Huawei incorporates its Rule 7.1 Disclosure (Dkt. 75).

**E.    DAMAGES**

**i.    NETGEAR'S Statement:**

NETGEAR seeks compensatory and treble damages and injunctive relief under Sections 4 and 16 of the Clayton Act. 15 U.S.C. §§ 15, 26. Pursuant to 18 U.S.C. § 1964(c), NETGEAR seeks recover treble its general and special compensatory damages, plus interests, costs, and attorneys' fees, incurred by reason of Huawei's violations of 18 U.S.C. § 1962(c). NETGEAR seeks disgorged profits, injunctive relief, and remedies for all other damages recoverable under Cal. Bus. & Prof. Code § 17200. NETGEAR seeks recovery of its litigation fees to defend against Huawei's improper lawsuits abroad, its legal fees in this action, the amount of its lost business attributable to Huawei's conduct, the amount of any license or other fees and expenses that exceed the value of a RAND license. NETGEAR seeks an award of punitive damages resulting from Huawei's fraud, oppression and malice associated with Huawei's unlawful conduct.

NETGEAR cannot fairly respond to Huawei's statement regarding nebulous "intended patent claims" as no patents have been identified, no products have been accused of infringement, and no facts regarding purported infringement has been provided to NETGEAR. NETGEAR further notes that Huawei does not contend that it is seeking damages consistent with a RAND license, so it is unclear if Huawei seeks to assert SEPs or non-SEPs.

**ii.    Huawei's Statement:**

Huawei denies that Netgear is entitled to any damages and will respond at an

appropriate time to the specific damages theories asserted by Netgear as well as the amount and computation of any alleged damages.

For Huawei's intended patent-infringement counterclaims, Huawei is entitled to damages adequate to compensate it for Netgear's infringement, the full extent of which is currently unknown and requires discovery from Netgear. Huawei's damages shall be no less than a reasonable royalty for Netgear's infringement of the Huawei's to-be-asserted patents, together with interests and costs as fixed by the Court. A reasonable royalty may be determined by analysis of a variety of factors, including those set forth in *Georgia-Pacific Corp. v. U.S. Plywood Corp.* 318 F. Supp. 1116 (S.D.N.Y. 1970). Additionally, Huawei is entitled to enhanced damages based on Netgear's willful infringement of certain Huawei patents. Huawei requires additional discovery to determine the nature of Netgear's infringement and the full range of infringing products, to obtain evidence relevant to the *Georgia-Pacific* factors, and to determine the appropriate amount of damages in this matter.

## F.    INSURANCE

The Parties are currently unaware of any insurance coverage relating to the subject matter of this litigation.

## G.    MOTIONS

### i.    NETGEAR'S Statement:

NETGEAR does not intend to file any motions seeking to add new parties at this time. However, discovery in this action is in its early stages, and as additional information becomes known to NETGEAR through discovery, NETGEAR may seek to add new parties, including possible Huawei affiliates or related companies, or other entities involved in the Huawei's scheme to dominate the market. NETGEAR expects that if Huawei files counterclaims asserting patent infringement, NETGEAR will move to sever or bifurcate the patent infringement counterclaims so that the patent validity and infringement issues are properly addressed separately from the RAND and unfair competition issues presented to the Complaint currently pending

in this action. NETGEAR's motion will suggest that the patent infringement claims should proceed on a different track because they will require patent disclosures, a claim construction hearing, and technical experts not contemplated or required in the current action.

NETGEAR will oppose Huawei's Motion for a Protective Order and/or Partial Stay of Discovery as described below and will respond in due course after any such motion is filed.

### ii.    Huawei's Statement:

Huawei has filed a Partial Motion to Dismiss Netgear's Complaint (Dkt. 80) and a Motion to Strike (Dkt. 76), which are now fully briefed and scheduled for hearing on October 11, 2024.

Huawei also intends to file a Motion for a Protective Order and/or Partial Stay of Discovery relating to discovery requested by Netgear that concern the claims/counts that are subject to Huawei's Motions to Dismiss and Strike—*i.e.*, Claims for Relief No. 1–4 and 7–10, for antitrust, RICO, common law fraud, negligent misrepresentation, promissory estoppel, and violations of California UCL. Huawei intends to file this motion by no later than the deadline for Huawei to respond to Netear's First Set of Requests for Production of Documents (deemed served August 13, 2024).

Huawei will respond to Netgear's intended motion "to sever or bifurcate the patent infringement counterclaims" when it is filed. Huawei has proposed a schedule for patent disclosures and claim construction running from the date of Huawei's Answer and Counterclaims, as set forth in **Exhibit B**. Huawei's proposed patent schedule may be handled concurrently with fact and expert discovery in this case.

Huawei also anticipates that the parties will engage in *Markman* briefing concerning the construction of asserted claims of Huawei's to-be-asserted patents.

Huawei does not presently intend to move to add other parties at this time. Because Huawei intends to assert its patent-infringement counterclaims concurrently

with its answer, Huawei also does not presently intend to file a motion to add claims in this matter.

## H.   DISPOSITIVE MOTIONS

The Parties have not yet determined what issues or claims they will request to be determined by motion for summary judgment or motion *in limine*. Following discovery, however, the Parties expect to be in a better position to identify such issues or claims.

## I.   MANUAL FOR COMPLEX LITIGATION

The Parties do not currently anticipate using procedures from the Manual for Complex Litigation.

## J.   STATUS OF DISCOVERY

NETGEAR delivered their First Set of Requests for Production of Documents on Huawei on August 2, 2024, which were deemed served on August 13, 2024. NETGEAR served its First Set of Interrogatories on August 16, 2024.

Huawei served its First Set of Requests for Production, Interrogatories and Requests for Admission on August 13, 2024.

## K.   DISCOVERY PLAN

### i.   Initial Disclosures

No initial disclosures have been made yet, as the deadlines for initial disclosures under Rule 26 fall after the deadline for submitting this Joint Rule 26(f) Report to the Court. Initial disclosures will be made on August 27, 2024, as required by Federal Rule of Civil Procedure 26(a)(1)(C).

### ii.   Discovery Subjects, Cut-Off, and Phasing or Limiting

#### (a)   Schedule

##### 1. NETGEAR's Statement:

Attached as **Exhibit A** is the Court's Schedule of Pretrial and Trial Worksheet with NETGEAR's proposed dates for proceeding on the allegations currently pending in NETGEAR's Complaint. Rather than providing deadlines for the

currently pending claims, Huawei provides deadlines for only two causes of action from NETGEAR's Complaint and adds deadlines for patent infringement counterclaims it intends to file. NETGEAR believes that Huawei's proposal wrongly presupposes dismissal of claims (even where leave to amend is freely granted) and that its unidentified and speculative patent claims will be integrated into this case schedule. The Parties' competing proposed dates for the completion of discovery (consistent with the previously identified case scopes) are set forth in the chart provided by Huawei and attached as **Exhibit B**.

NETGEAR proposes to proceed expeditiously with discovery and trial on NETGEAR's asserted claims and any defenses thereto. NETGEAR seeks a trial 18 months from the filing of the Complaint.

NETGEAR seeks a prompt trial date given the exigent circumstances resulting from Huawei's anticompetitive, fraudulent and racketeering conduct, including its efforts to seek injunctions abroad against NETGEAR, a willing licensee.

During the meet and confer process, Huawei indicated, without providing any particularity, that it intends to file four to six unrelated and permissive counterclaims of patent infringement at an indeterminate time (i.e., after rulings on the current or any future Rule 12(b)(6) motion). Such counterclaims are not compulsory to any cause of action filed by NETGEAR. Such claims would introduce unnecessary added complexity into an already complex case and are more properly suited as part of a severed and separate cause action. Huawei has already sued NETGEAR multiple times for patent infringement in various different regions of the world and those claims, like the portended claims here, are different from and unrelated to the unfair competition, antitrust, breach of contract and civil RICO claims that NETGEAR asserts in this case. The Complaint in this case was filed on January 30, 2024, and scheduling should fairly be based on that filing date. Huawei's insertion of patent infringement claims in this cause of action, some seven-eight months after the filing of the Complaint, is a transparent attempt to postpone the fair resolution of

NETGEAR's separate and distinct causes of action. There is no reason to saddle a single jury with numerous causes of action relating to Huawei's unfair and anticompetitive business practices plus wholly unrelated and complex patent infringement claims spanning different technologies. As a result, if Huawei does file patent infringement counterclaims, NETGEAR will move to sever those claims into a separate action or bifurcate trial on any such claims until after a trial on NETGEAR's claims has been resolved. Huawei's providing of a schedule on yet-to-be-filed (and may never be filed or severed) counterclaims is premature and prejudicial to NETGEAR's rights. NETGEAR's proposed schedule should be adopted.

Should a time come when Huawei files counterclaims, NETGEAR is willing to meet and confer with Huawei to determine the appropriate next steps and determine if severance, bifurcation, and/or any scheduling amendments are appropriate. At this time, NETGEAR does not and cannot provide a discovery schedule for Huawei's unasserted, unidentified potential counterclaims. NETGEAR lacks information necessary for scheduling. For example, NETGEAR is unaware of the precise number, identity and timing of any counterclaims to be filed by Huawei. It is prejudicial to require NETGEAR to speculate on the scope, number and technological nature of Huawei's potential counterclaims. Should any patent infringement counterclaims become ripe in this case or a severed action, NETGEAR does not oppose discussing patent-specific disclosures and deadlines.

### 2. Huawei's Statement:

Huawei proposes to proceed expeditiously with discovery relating to the two claims for relief that Huawei has not moved to dismiss: breach of contract/FRAND (count 5) and the request for a declaratory judgment of implied license and/or patent exhaustion (count 6). As detailed in Huawei's proposed case schedule set forth in **Exhibit B**, Huawei proposes:

- a **12-month** fact-discovery period (running from Huawei's answer to

the close of fact discovery, and including patent-specific deadlines for contentions and a claim-construction/*Markman* hearing);

- a **2.5-month** expert-discovery period (running from the close of fact discovery to the deadline to file dispositive motions); and

- a trial date set for **20 months** from the date that Huawei answers.

Given the far-reaching and disparate nature of the claims that Huawei has moved to dismiss, *see* Dkt. 80 (moving to dismiss, among other claims, Netgear's antitrust and RICO claims), discovery should focus now on those claims that are clearly proceeding, and the Court's guidance on the scope of case will avoid unnecessary expenditure of party and Court resources relating to unnecessary and unwarranted discovery. Should the Court deny in part or in full Huawei's pending motions (Dkts. 76, 80), Huawei intends to propose an amended case schedule that will take into account additional time needed to conduct fact and expert discovery on Netgear's additional claims.

Netgear claims that Huawei's intended patent counterclaims are a "transparent attempt to postpone the fair resolution of NETGEAR's separate and distinct causes of action." That is wrong, as Netgear's own Complaint shows. Netgear accuses Huawei of seeking excessive royalties for what Netgear claims are "invalid and unenforceable patents." Compl. ¶109. Adjudicating infringement and validity will prove otherwise.

**(b)    Scope**

NETGEAR'S Statement: NETGEAR intends to seek discovery relating to the allegations set forth in the Complaint. NETGEAR reserves all rights to respond further should Huawei file any patent infringement counterclaims and those claims proceed as part of this case.

Huawei's Statement: Huawei intends to seek discovery on any affirmative defenses that it asserts in its answer, as well as discovery on at least following subjects: (1) the identification of infringing products; (2) detailed information

regarding the design, development, and operation of allegedly infringing products, including source code; (3) Netgear's manufacture, use, sale, offer to sell, or importation into the United States of allegedly infringing products, and the extent thereof; (4) Netgear's knowledge of the patents-in-suit; and (5) damages relating to Netgear's infringement, among others.

### (c)    Phasing or Limiting

NETGEAR'S Statement: As to the allegations in NETGEAR's Complaint, NETGEAR does not believe that discovery should be conducted in phases or be limited to or focused on particular issues, with the exception of completing fact discovery before expert discovery. NETGEAR believes that discovery in this case should be scheduled and conducted based on currently pending allegations, not based on speculative or unasserted possible claims.

NETGEAR will oppose Huawei's proposed motion for stay (see below). There is common discovery between the allegations subject to Huawei's Motion to Dismiss and the allegations not subject to the Motion to Dismiss. Proceeding with discovery on all issues is more efficient and the overlap favors proceeding on all issues. Once Huawei files its motion, NETGEAR will respond in due course.

NETGEAR reserves all rights to seek to sever into a separate action or bifurcate for a second, separate trial in this case any patent infringement counterclaims filed by Huawei. Any such counterclaims do not arise out of the same transaction or occurrence or series of transactions or occurrences as NETGEAR's claims in the Complaint. Resolution of the allegations in NETGEAR's Complaint requires analysis of Huawei's anticompetitive and monopolistic conduct, RICO-related conduct, fraud, and unfair business practices, among others. Any counterclaims filed by Huawei would focus on the separate and distinct technical analysis of NETGEAR products and a comparison of those products to patents.

Huawei's Statement: As noted above, Huawei has filed a Motion to Dismiss Netgar's Claims for Relief Nos. 1–4 and 7–10 (antitrust, RICO, fraud, negligent

misrepresentation, promissory estoppel, and UCL) as well as a Motion to Strike sixty paragraphs from Netgear's Complaint. Huawei intends to file a Motion for a Protective Order and/or Partial Stay of Discovery as to discovery requested by Netgear that concern the claims/counts that are subject to Huawei's pending motions. Apart from this motion, Huawei does not otherwise believe that discovery should be conducted in phases or be limited to or focused on particular issues, with the exception of completing fact discovery before expert discovery. Huawei notes that, if the Court denies in whole or in part its Motions to Dismiss and/or Strike, Huawei intends to propose a case schedule that will account for the additional time needed to conduct fact and expert discovery on those claims.

### iii.    Electronically Stored Information

The parties have discussed the preservation of discoverable information and do not anticipate any issues or difficulties regarding the preservation and/or production of discoverable information, including electronically stored information ("ESI"). The parties anticipate entering into an ESI Protocol and have tentatively agreed to model the ESI Protocol on the sample patent model from the Northern District of California with minor modifications. To the extent any issues arise relating to preservation, discovery, or ESI, the parties will meet and confer to resolve those issues.

### iv.    Claims of Privilege or Protection as Trial-Preparation Materials

The parties discussed issues relating to claims of privilege or protection as trial-preparation materials and are currently negotiating a stipulation of a Protective Order, which the parties intend to file once final agreement is reached.

### v.    Limitations on Discovery

Document Requests: The parties agree there are no limitations on the number of document requests that can be served, subject to the general scope and limits of discovery in Rule 26(b)(1).

Requests for Admission:   The parties agree that each party may serve 75

requests for admission.

Interrogatories:  The parties agree that each party may serve 25 interrogatories. NETGEAR reserves all rights to seek additional interrogatories should Huawei seek to add up to six patent infringement counterclaims to this case.

Depositions:  Each party shall be permitted 100 hours of party witness deposition time, including depositions of witnesses deposed under Rule 30(b)(6). Each party may take a maximum of 15 fact depositions of a party. These proposed limits do not include expert depositions or third party depositions. If a witness cannot testify in English or requires the use of an interpreter, then each hour on the record with such a witness counts as 40 minutes toward the cap.

NETGEAR reserves all rights to seek additional deposition time should Huawei seek to add up to six patent infringement counterclaims to this case.

Huawei reserves the right to seek additional deposition time should one or more of Netgear's Claims for Relief No. 1–4 and 7–10 proceed.

Expert depositions:  The parties have 7 hours of deposition per expert report.

### vi.    Privilege Logs

The Parties agree that absent a showing of good cause, there is no requirement to log client communications and/or attorney work product generated on or after the date of NETGEAR's initial Complaint (January 30, 2024).

### vii.    Discovery of Expert Materials

The Parties agree that drafts of any expert report, declaration, or disclosure, including drafts of reports required under Rule 26(a)(2), as well as any notes made by experts, are protected work product and shall not be discoverable regardless of the form of the draft and notes. The Parties further agree that communications of any form relating to this action between (a) a party to these actions or the Parties' attorneys and (b) the Parties' expert(s), whether testifying or non-testifying, are protected work product and shall not be discoverable, except to the extent the communications identify facts, data, or assumptions that the Parties attorneys

provided and that the expert(s) relied upon in forming any opinions expressed or to be expressed in an expert report provided pursuant to Rule 26(a)(2). Notwithstanding the above, the Parties shall identify and produce copies of any documents relied upon by the expert as a basis for the opinions set forth in his or her report, declaration, affidavit, and/or testimony, including witness statements and live testimony. Nothing in this paragraph is intended to, or shall be interpreted to, diminish the protections in Rule 26(b) regarding communications with testifying and non-testifying experts, draft expert reports, or facts or opinions held by non-testifying experts.

Furthermore, nothing in this agreement is intended to restrict discovery relating to (a) the compensation paid to an expert or (b) any assumptions that counsel provided and that the expert relied on in forming the opinions to be expressed.

### viii.    Non-deposed Trial Witnesses

The parties agree that if a witness not previously disclosed under Rule 26(a) or (e), and whose non-disclosure was substantially justified or is harmless, will appear at trial and has not yet been deposed, the opposing party may take a deposition of that witness in advance of any trial testimony. Any such deposition will be limited to 7 hours, but the overall hour limit set forth in section K.iv above shall not apply.

### ix.    Production of Materials Obtained by Third-Party Subpoenas

A Party that serves a subpoena in this matter on a third party shall immediately provide a copy of the subpoena to the other party. A party that receives documents from a third party pursuant to a subpoena will reproduce those documents to the other party within three (3) business days. Where reproduction of documents within three (3) business days is not possible, the party that received the documents will provide prompt notice to the other party and will work in good faith to resolve the issue on a case-by-case basis.

### x.    Other Orders

At this time, the parties do not foresee any issues that would require the Court to enter any unusual orders under Rules 16(b) or 16(c).

**L.    DISCOVERY CUT-OFF**

The parties' competing proposed schedules for discovery cut-off, which is the final day for completion of discovery, including resolution of all discovery motions, are set forth in the charts attached as **Exhibit A** (NETGEAR's proposed schedule) and **Exhibit B** (Huawei's proposed schedule).

**M.    EXPERT DISCOVERY**

The parties' proposed dates for initial expert witness disclosures and rebuttal expert witness disclosures, as well as the expert discovery cut-off, are set forth in the charts attached as **Exhibit A** (NETGEAR's proposed schedule) and **Exhibit B** (Huawei's proposed schedule).

**N.    SETTLEMENT EFFORTS TO DATE AND ALTERNATIVE DISPUTE RESOLUTION ("ADR")**

The Parties have not engaged in any settlement discussions pertaining to this specific Action to date. The Parties have agreed to select ADR Procedure No. 3, "private mediation." The Parties agree that the procedure should take place after any dispositive motions are filed, but before the occurrence of the final pre-trial conference.

**O.    TRIAL ESTIMATE**

Both Parties have requested a jury trial. The Parties will be prepared to discuss in detail the basis for their respective proposals and estimates.

NETGEAR's Statement: NETGEAR anticipates a 10-day trial based on the allegations pending in NETGEAR's Complaint. As indicated above, any trial concerning patent counterclaims ultimately lodged by Huawei in the future should be part of a separate trial at a time after the trial concerning NETGEAR's currently pending claims. NETGEAR lacks information to provide any further information on a trial estimate for those claims as they are purely speculative at this point.

Huawei's Statement: Huawei anticipates a 10-day trial for: (1) Netgear's breach of contract/FRAND (count 5) and declaratory judgment of implied license

and/or patent exhaustion (count 6); and (2) Huawei's patent counterclaims.

## P.   TRIAL COUNSEL

### i.   For NETGEAR:

Blair M. Jacobs (Pro Hac Vice) (lead trial counsel)

Christina A. Ondrick (Pro Hac Vice)

John S. Holley (Pro Hac Vice)

Theresa C. Becerra (State Bar No. 205338)

### ii.   For Huawei:

Kalpana Srinivasan (State Bar No. 237460) (lead trial counsel)

Michael Gervais (State Bar No. 330731)

J. Hoke Peacock, III (*pro hac vice*)

Shawn L. Raymond (*pro hac vice*)

Katherine Peaslee (State Bar No. 310298)

Hunter Vance (*pro hac vice*)

Steven M. Seigel (*pro hac vice*)

Larry Liu (*pro hac vice*)

Julia Risley (*pro hac vice*)

## Q.   INDEPENDENT EXPERT OR MASTER

The Parties do not believe an independent expert or master is warranted in this case.

## R.   SCHEDULE WORKSHEET

The Parties' competing proposed case schedules are attached as **Exhibit A** (NETGEAR's proposed schedule) and **Exhibit B** (Huawei's proposed schedule).

## S.   OTHER ISSUES

### i.   Non-English-Speaking Witnesses

Some of the witnesses in this case will likely include non-native English speakers. The Parties have reached agreement on treatment of deposition time for interpreted depositions. The Parties will confer and work in good faith to resolve any

other issues that may arise, including as related to discovery in foreign jurisdictions.

### ii.    Service by E-Mail

All papers will be served on the opposing party by e-mail. For purposes of calculating the deadline to respond, email service will be treated the same as hand–delivery.

Dated: August 23, 2024                  Respectfully submitted,

SPENCER FANE LLP


By: /s/ Blair M. Jacobs
      Blair M. Jacobs
      Christina A. Ondrick
      John S. Holley
      Theresa C. Becerra

      *Attorneys for Plaintiff*
      NETGEAR, INC.


By: /s/  Kalpana Srinivasan
      Kalpana Srinivasan
      Michael Gervais
      J. Hoke Peacock, III
      Shawn L. Raymond
      Hunter Vance
      Katherine Peaslee
      Steve Seigel
      Larry Liu
      Julia Risley

      *Attorneys for Defendant*
      *Huawei Technologies Co., Ltd.*